**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALI NUR ROBLE,

      Petitioner-Appellant,

v.

STEPHEN F. PONTESSO, Warden,

      Defendant-Appellee.

No. 03-1098
(D.C. No. 03-RB-17 (OES))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **O'BRIEN** and **BALDOCK** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Ali Nur Roble filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Therein, Roble challenged a final administrative

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

order removing him to Somalia or alternatively to Kenya, and sought release from his pre-removal incarceration by the Department of Homeland Security (DHS). [1] The district court denied the petition in its entirety. Roble appeals. We exercise jurisdiction under 28 U.S.C. § 2253(a). Because the district court failed to make the findings required to support its determination that the DHS may continue to detain Roble, we vacate and remand.

I.

Roble arrived in the United States from Germany in June 1999. He was carrying a Kenyan passport. Based on this passport, immigration authorities admitted Roble. In August 1999, Roble applied for asylum. In his application, Roble asserted he was not Kenyan, but Somalian. Roble averred that his Kenyan passport was fraudulent and that he had purchased it for $300 after traveling from Somalia to Kenya. As grounds for his asylum claim, Roble claimed he suffered severe persecution in Somalia because of his membership in the Midgan tribe.

An immigration judge (IJ) denied Roble's application for asylum and ordered him removed from the United States for failure to possess a valid

---

[1] Effective March 1, 2003, the custodial functions previously performed by the Immigration and Naturalization Service (INS) were transferred to the Department of Homeland Security (DHS). See Yuk v. Ashcroft, 355 F.3d 1222, 1224 n.3 (10th Cir. 2004). We refer to the INS and DHS interchangeably.

immigrant visa. The IJ determined Roble failed to establish he was in fact from Somalia. Roble's Kenyan passport appeared genuine. The IJ found Roble's testimony regarding his Somalian origins not credible. The IJ further found no reliable documentation to corroborate Roble's claim he was from Somalia. Oddly, the IJ ordered Roble removed to Somalia, or in the alternative, to Kenya. Roble appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA summarily affirmed the IJ's decision on August 9, 2002. See 8 C.F.R. § 3.1(a)(7) (2002). Roble did not seek judicial review of the BIA's decision.

Sometime during the first two weeks of April, 2002, the Immigration and Naturalization Service (INS) placed Roble in civil detention, where he remains. In December 2002, the United States District Court for the Western District of Washington entered a temporary restraining order enjoining the INS from removing Somali natives or nationals in the United States to Somalia. See Ali v. Ashcroft, 213 F.R.D. 390, 396 (W.D. Wash. 2003). In January 2003, the court entered a permanent injunction because Somalia does not have a functional government to accept aliens removed from this country. See id. 400-05.

In September 2003, the Ninth Circuit upheld the injunction. <u>Ali v. Ashcroft</u>, 346 F.3d 873 (9th Cir. 2003). [2]

Roble filed a § 2241 petition in February 2003 seeking review of his final order of removal and release from INS custody. The INS filed a response to the petition, in which it asserted (1) Roble's request for relief from removal to Somalia was not ripe because the INS was not currently deporting aliens to Somalia; (2) INS was attempting to obtain a travel document that would allow Roble to be removed to Kenya; and (3) INS was entitled to continue holding Roble because the ninety-day statutory "removal period" described in 8 U.S.C. § 1231(a)(2), tolled by the injunction, had not run.

The district court summarily denied Roble's petition, relying generally on the INS' brief. The district court's analysis, however, departed significantly from that of the INS in one respect. The district court refused to consider the INS's argument that Roble should be returned to Kenya because Roble did not seek removal to Kenya in his petition.

---

[2]    The Supreme Court has agreed to determine, on a petition for writ of certiorari to the Eighth Circuit, whether DHS may deport aliens to Somalia; but the Court has not yet decided the issue. <u>Jama v. INS</u>, 329 F.3d 630 (8th Cir. 2003), <u>cert. granted</u>, 2004 WL 323175 (U.S. Feb. 23, 2004) (No. 03-674).

II.

A. *Request for Release*

Roble seeks release pending removal, claiming his incarceration for an indefinite period is unlawful. The law provides that the Attorney General shall detain an alien during the "removal period." 8 U.S.C. § 1231(a)(2). If the alien is not removed during this period, he is entitled to release, subject to supervision under regulations prescribed by the Attorney General. Id. § 1231(a)(3). For purposes of this case, the removal period is ninety days from the date the IJ's order of removal became administratively final, or August 9, 2000, the date on which the BIA affirmed the IJ's order. See id. § 1231(a)(1)(B)(i). [3] We therefore conclude the ninety-day "removal period" began running for Roble on August 9, 2002, and expired November 7, 2002.

Section 1231(a)(6) empowers the DHS to detain an alien beyond the end of the removal period, if he is a "risk to the community" or "unlikely to comply with the order of removal." Id. § 1231(a)(6). The DHS admits the record does not specify under which of these criteria it continues to hold Roble. The DHS nevertheless contends subsection (a)(6) provides it with authority to continue

---

[3] Although Roble requested review of the IJ's removal order in his § 2241 petition, the district court did not enter a stay of his removal; therefore § 1231(a)(1)(B)(ii) does not extend the date on which the removal period began.

detaining Roble. Section 1231(a)(6), however, does not give the DHS carte blanche to detain Roble indefinitely.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court discussed the constitutional limitations on indefinite detention under subsection (a)(6).[4] The Supreme Court began by observing that the detention requirement of § 1231(a)(6) has two purposes: (1) assuring the appearance of aliens at immigration proceedings, and (2) protecting the community from dangerous aliens. Id. at 690. As the possibility of removal becomes remote, the first justification drops out. The second justification–protecting the community–is sustainable "only when limited to specially dangerous individuals and subject to strong procedural protections." Id. at 691. The Court reasoned that

---

[4] The Supreme Court expressly extended the protections in Zadvydas only to aliens who have "effected an entry into the United States." 533 U.S. at 693. Circuit cases have reached differing results on what constitutes an "entry into the "United States" sufficient to trigger the due process protections discussed in Zadvydas. Compare, e.g., Borrero v. Aljets, 325 F.3d 1003, 1007-08 (8th Cir. 2003) (rejecting application of Zadvydas to inadmissible Mariel Cuban paroled into the United States) with Rosales-Garcia v. Holland, 322 F.3d 386, 404-08 (6th Cir.) (en banc) (permitting Mariel Cubans to assert Zadvydas), cert. denied, 123 S. Ct 2607 (2003). In view of the apparent circuit split, the Supreme Court has agreed to decide a case raising this issue. Benitez v. Wallis, 337 F.3d 1289 (11th Cir. 2003), cert. granted, 124 S. Ct. 1143 (2004).

Here, however, we need not reach the issue. Although the DHS mentions the fact that Roble was ordered removed "as an alien inadmissible at the time of his entry into the United States," Aplee Br. at 3, it does not argue that Zadvydas is thereby inapplicable to this case, see id. at 26-29. We do not foreclose DHS from making this argument on remand.

§ 1231(a)(6) neither applies narrowly to such "specially dangerous individuals" nor does it provide such "strong procedural protections." Interpreting the subsection "to avoid a serious constitutional threat," the Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. The Court created a rebuttable presumption that an alien should be released if he has been detained for six months and provides good reason to believe no significant likelihood exists he will be removed in the foreseeable future. Id. at 701.[5]

Here, Roble has been detained for more than six months and because of the injunction barring removal to Somalia, his removal to Somalia does not appear imminent. Whether Roble may be removed to Kenya in the foreseeable future is another matter. The district court avoided this question, concluding Roble's removal to Kenya was not at issue. Because the IJ ordered Roble removed to Kenya in the alternative, however, Roble's possible removal to that country is very much in issue. We therefore remand to the district court

---

[5]     Roble has undoubtedly been detained for more than six months. We reject the DHS's argument that the permanent injunction in the Ninth Circuit tolls the six-month period. DHS cites Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002) in support of its tolling argument. Akinwale, however, reasoned that an alien unjustifiably interferes with his own removal, within the meaning of 8 U.S.C. § 1231(a)(1)(C), by seeking a judicial stay. Nothing suggests the Ninth Circuit stay resulted from Roble's efforts.

to address the issue of whether Roble might be removed to either Somalia or Kenya in the foreseeable future.

On remand, the district court must first determine whether a significant likelihood exists that Roble will be removed to Somalia or Kenya within the reasonably foreseeable future. If the court so finds, then the DHS may be entitled to further detain Roble for a reasonable period of time pending removal. Roble's continued detention would be authorized, however, only if the district court determines that Roble is a flight risk or a risk to the community–factors justifying confinement within that reasonable removal period. See id. at 700. The record presently contains neither a judicial finding concerning the likelihood of Roble's removal to Somalia or Kenya, nor a judicial finding concerning his flight risk or the risk he may pose to the community if he is released pending removal. The district court should make such findings, as necessary. [6]

B. *Review of Final Order of Deportation*

The district court had subject matter jurisdiction under 28 U.S.C. § 2241 over Roble's claim for release. Zadvydas, 533 U.S. at 687-88. The court's subject matter jurisdiction under § 2241 also generally extends to review of final

---

[6] If the district court determines Roble is entitled to release, such release would be upon conditions set by the Attorney General pursuant to 8 U.S.C. § 1231(a)(3). Upon violation of those conditions, Roble would be subject to return to custody. See Zadvydas, 533 U.S. at 700.

orders of removal.  See id.  The DHS contends, however, that the district court lacked subject matter jurisdiction to review any of Roble's claims, other than his challenge to his continued detention, because Roble failed to seek direct review of his final order of removal.  The district court did not reach this issue.  Instead, it adopted the DHS's argument that Roble's challenges were not ripe, because he could not be removed to Somalia.  See R., doc. 10 at 3-4.  The district court's conclusion regarding ripeness, however, is unsupportable, because a favorable judicial determination on Roble's asylum claim could affect the duration of his continued incarceration.

The district court has not evaluated the DHS's argument that Roble waived review of his final order of removal by failing to seek direct review.  Because the panel is remanding on another claim over which the district court plainly has jurisdiction,  see Zadvydas , 533 U.S. at 687, we also instruct the district court on remand to consider its jurisdiction (and the merits, if necessary) over the other issues Roble raises.

The judgment of the district court is VACATED and this matter is REMANDED for further proceedings in accordance with this opinion.  Roble's motion for immediate release from custody, referred to the merits panel, is

DENIED in light of the further proceedings necessitated by this opinion.

His motion to proceed in forma pauperis is GRANTED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

-10-